IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Wissahickon Playground          :
                                       :
Appeal of: Gregory Paulmier, Melissa   :
Graham, Dean Brown, Wayne Allen,       :
Karletha Brooks, Ronald Hays, Henry    :
(Hal) Sawyer, Miriam L. Rollins, Dock  :   No. 2492 C.D. 2015
Brown, Helen Jones, Rodney Haines      :   Argued: February 7, 2017


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE JULIA K. HEARTHWAY, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                            FILED: March 28, 2017


   Gregory Paulmier (Paulmier), Melissa Graham, Dean Brown, Wayne Allen, Karletha Brooks, Ronald Hays, Henry (Hal) Sawyer, Miriam L. Rollins, Dock Brown, Helen Jones and Rodney Haines (collectively, Appellants) appeal from the Philadelphia County Orphans' Court's (trial court) November 3, 2015 order denying Appellants' Petition for Citation and Petition for Injunction (collectively, Petition). Appellants present three issues for this Court's review:  whether the trial court erred by dismissing their action (1) on the basis of laches; (2) because Orphans' Court approval was required before the sale; and (3) where the elements necessary for a preliminary injunction had been met.  After review, we affirm.

## Background[1]

This matter concerns a piece of land bordered by Pulaski Avenue, Queen Lane, Prisdilla Street and Penn Street in the Germantown section of the City of Philadelphia (City). In the 18th century, this land was used as a burial ground (commonly known as Potter's Field). On August 8, 1935, the land was deeded to the City for use as a playground or recreational space. In 1953, half of the property was sold to the Philadelphia Housing Authority (PHA) to build high-rise housing projects. In 2005, the City and PHA began to examine the property for possible redevelopment (Redevelopment Plan). Between 2005 and 2010, the Redevelopment Plan was refined with resident and community participation. On March 4, 2010, City Council introduced Ordinance No. 100110 (Ordinance) which proposed the City's conveyance of 5326 Pulaski Avenue (Property) to the Philadelphia Authority for Industrial Development (PAID). On April 8, 2010, City Council passed the Ordinance. Thereafter, the Redevelopment Plan proposed that the 120-unit rental high-rise building (High-Rise) be replaced by 55 lower-density public housing rental units. From at least 2011 onward, Appellants complained at public meetings about the proposed construction.

On June 27, 2012, Paulmier stated at a public meeting that the Westside Neighborhood Council intended to file a lawsuit to stop the Redevelopment. On September 11, 2014, Samuel C. Stretton, Esquire (Appellants' Counsel) sent a letter to PHA's President and CEO Kelvin Jeremiah (Jeremiah) and Councilwoman Cindy Bass, stating that he represented Appellants and that he was raising questions because it was his position that the Property has been used as a playground for many years and the use should not be changed without Orphans' Court approval. On September 14, 2014, after four public meetings, community outreach and major press coverage,

---

[1] The facts recited herein are undisputed as they are taken from the Joint Stipulation of Facts which was submitted to the trial court by the parties on October 13, 2015.

2

the High-Rise was imploded. On September 17, 2014, PHA received Appellants' Counsel's letter. On December 2, 2014, Appellants' Counsel informed PHA's Senior Counsel Starr Marshall Cash, Esquire (PHA's Counsel) that he would be filing a lawsuit shortly. On December 17, 2014, PHA began removing the High-Rise's remnants. Thereafter, the Redevelopment began. Fifty-five new homes have been completed on the Property, and 55 families have been living therein, in some cases, for almost a year.

**Facts**

On March 3, 2015,[2] Appellants filed a Complaint Seeking Injunctive and Declaratory Relief and a Motion Requesting Preliminary Hearing. On March 19, 2015, the trial court denied the request without prejudice because Appellants should have filed a petition for citation and a petition for injunction pursuant to Local Orphans' Court Rule 1.2.P(1). On March 26, 2015, Appellants filed the Petition. **The Petition sought to enjoin the City, PHA and PAID** (collectively, Appellees) **from developing the Property into low-density rental housing units and to direct Appellees to reopen the Property as a playground**. A hearing was held on October 14 and 15, 2015. On November 3, 2015, the trial court denied the Petition.[3] Appellants filed a timely notice of appeal.[4] The trial court issued an order directing

---

[2] By that time, PHA was already six months into the Redevelopment, and had spent tens of millions of dollars.

[3] Appellants did not seek reconsideration, did not attempt to have the appeal expedited pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 123, and did not seek an injunction pending appeal under Rule 1732.

[4] Our standard of review from a final order of the Orphans' Court is as follows:

> The findings of a judge of the [O]rphans' [C]ourt division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support. . . . In reviewing the Orphans'

3

Appellants to file a Pennsylvania Rule of Appellate Procedure 1925(b) statement of errors complained of on appeal (1925(b) Statement). Appellants filed their 1925(b) Statement on November 25, 2015. On February 3, 2016, the trial court filed its opinion.

## Discussion

Initially,

> [t]he prerequisites for a preliminary injunction are 1) that the injunction is necessary to prevent immediate and irreparable harm that could not be compensated by damages; 2) that greater injury would result by refusing the injunction than by granting it; 3) that the injunction restores the parties to the status quo that existed immediately before the alleged wrong; 4) that the wrong is manifest and the injunction is reasonably suited to abate it; and 5) the applicant's right to relief is clear. To establish a clear right to relief, the applicant must show that it is likely to succeed on the merits. Our review of a trial court's grant of a preliminary injunction is to determine whether there were *any reasonable grounds* for the trial court's action, and we will reverse only if no such grounds exist.

*In re Milton Hershey School Trust,* 807 A.2d 324, 326-27 (Pa. Cmwlth. 2002) (citation omitted).

---

> Court's findings, our task is to ensure that the record is free from legal error and to determine if the Orphans' Court's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence.

> *In re Estate of Bechtel*, 92 A.3d 833, 837 (Pa. Super. 2014) (citation omitted).

*Werner v. Werner,* 149 A.3d 338, 341 (Pa. Super. 2016).

4

Appellants first argue that the trial court erred by determining that their action was barred by the doctrine of laches (Laches)[5] because, in order for Laches to apply, Appellees had to have acted with clean hands and due diligence. Specifically, Appellants maintain that because Appellees were aware that the public trust doctrine[6] and what is commonly known as the Dedicated or Donated Property Act (DDPA)[7] require Orphans' Court approval prior to the sale of the Property, Laches does not apply.

Appellees[8] rejoin that (1) the appeal should be dismissed as moot because PHA has completed the Redevelopment's construction and 55 families have moved in, and (2) the trial court properly applied Laches because Appellants failed to prosecute their claims with due diligence, thereby prejudicing PHA. Because it is potentially dispositive, we will address the mootness issue first.

## Mootness

> The mootness doctrine requires an actual case or controversy to exist at all stages.
>
> > It is a well-established principle of law that this Court will not decide moot questions. The articulation of the mootness doctrine . . . was acknowledged in our

---

[5] "Equity has established the doctrine of laches to preclude actions that are brought without due diligence and which result in prejudice to the non-moving party." *Koter v. Cosgrove,* 844 A.2d 29, 34 (Pa. Cmwlth. 2004).

[6] As this Court explained, '[u]nder the common law public trust doctrine, when land has been dedicated and accepted for public use, a political subdivision is estopped from interfering with or revoking the grant at least so long as the land continues to be used, in good faith, for the purpose for which it was originally dedicated.' *In re Estate of Ryerss,* 987 A.2d 1231, 1237 n.[]8 (Pa. Cmwlth. 2009) (citation omitted). *Borough of Downingtown v. Friends of Kardon Park,* 55 A.3d 163, 169 n.9 (Pa. Cmwlth. 2012).

[7] Act of December 15, 1959, P.L. 772, 53 P.S. §§ 3381-3386.

[8] On December 2, 2016, PHA filed a brief and the City and PAID filed a joinder in PHA's brief.

5

decision in *In re Gross, . . .* 382 A.2d 116 ([Pa.] 1978) as follows:

> The problems arise from events occurring after the lawsuit has gotten under way—changes in the facts or in the law—which allegedly deprive the litigant of the necessary stake in the outcome. The mootness doctrine requires that 'an actual controversy must be extant at all stages of review. . . .' G. Gunther, Constitutional Law 1578 (9th ed.1975).

> [*Gross,*] 382 A.2d at 119. An issue can become moot during the pendency of an appeal due to an intervening change in the facts of the case or due to an intervening change in the applicable law.

> *In re Cain, . . .* 590 A.2d 291, 292 ([Pa.] 1991).

*Dep't of Envtl. Protection v. Cromwell Twp., Huntingdon Cnty.,* 32 A.3d 639, 651 (Pa. 2011).

Appellees maintain that this case has become moot because, first, the Property has already been redeveloped with low-density rental housing units and, second, the Property cannot now be reopened as a playground.

> We agree that these two factors render the current appeal moot. Because Appellants sought an injunction to prevent [Appellees] from [developing the Property[9]], and because, since the filing of this appeal, [Appellees have completed the Redevelopment], there is currently 'nothing for the lower court to enjoin, nor can this Court now order the injunctive relief sought below.' *Gross, . . .* 382 A.2d at 121. Moreover, though Appellants' [P]etition below sought an injunction [and an order directing reopening of the playground,] any such relief provided by this [C]ourt would be superfluous in light of the [fact that the Property had already been developed into housing units]. Accordingly, we hold that the instant appeal has become moot.

---

[9] Here, the Redevelopment began **before** the filing of the Petition.

*Phila. Lodge No. 5, Fraternal Order of Police v. Phila. Bd. of Pensions & Retirement,* 606 A.2d 603, 605 (Pa. Cmwlth. 1992) (citation omitted).

"It is well settled that the courts 'do not render decisions in the abstract or offer purely advisory opinions.' *Pittsburgh Palisades Park, LLC v. Commonwealth, . . .* 888 A.2d 655, 659 ([Pa.] 2005)." *Harris v. Rendell,* 982 A.2d 1030, 1035 (Pa. Cmwlth. 2009), *aff'd*, 992 A.2d 121 (Pa. 2010).

> An advisory opinion is one issued despite the lack of a justiciable case or controversy between the parties to an appeal. *See* [*Pa.*] *Pub*[.] *Util*[.][*Comm'n*] *v.* [*Cnty.*] *of Allegheny, . . .* 203 A.2d 544, 546 ([Pa.] 1964). **Where the issues in a case are moot, any opinion issued would be merely advisory and, therefore, inappropriate**. [*Dep't*] *of* [*Envtl.*] *Res*[.] *v. Jubelirer, . . .* 614 A.2d 204, 212–13 ([Pa.] 1992) (citations omitted).

*Stuckley v. Zoning Hearing Bd. of Newtown Twp.,* 79 A.3d 510, 516 (Pa. 2013) (emphasis added). Consequently, "a decision on the merits of the case is precluded by the doctrine of mootness[.]" *Util. Workers Union of Am., Local 69, AFL-CIO v. Pub. Util. Comm'n,* 859 A.2d 847, 849 (Pa. Cmwlth. 2004).

Based on the foregoing, the trial court's order is affirmed.[10]

_____
ANNE E. COVEY, Judge

---

[10] This Court has reviewed the trial court's decision and discerns no error in its reasoning.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Wissahickon Playground      :
                                            :

Appeal of: Gregory Paulmier, Melissa  :
Graham, Dean Brown, Wayne Allen,  :
Karletha Brooks, Ronald Hays, Henry  :
(Hal) Sawyer, Miriam L. Rollins, Dock  :    No. 2492 C.D. 2015
Brown, Helen Jones, Rodney Haines    :

## O R D E R

AND NOW, this 28th day of March, 2017, the Philadelphia County Orphans' Court's November 3, 2015 order is affirmed.

_____
ANNE E. COVEY, Judge
